NO. 07-02-0479-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

FEBRUARY 27, 2004

_____


JERRY LEE PEREZ, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____


FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;

NO. CR-00D-058; HON. RICHARD DAMBOLD, PRESIDING

_____

Before REAVIS and CAMPBELL, JJ., and BOYD, S.J.[1]


In this appeal, appellant Jerry Lee Perez seeks reversal of his conviction for indecency with a child and the ensuing jury-assessed punishment of 20 years confinement in the Institutional Division of the Texas Department of Criminal Justice. In doing so, he presents three issues for our decision. In those issues he contends: 1) the trial court erred in admitting appellant's statement into evidence; 2) the trial court erred in admitting

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004).

appellant's statement for impeachment purposes; and 3) appellant was denied effective assistance of counsel at trial. We affirm the judgment of the trial court.

## Factual Background

The nature of appellant's challenges requires a brief recitation of the relevant evidence. On February 12, 2000, Hereford Police Department Officer Allison Forbis was dispatched to a residence in Hereford in response to a sexual assault charge. She estimated she arrived at the residence within three minutes of receiving the call. Upon her arrival, she was met by Frank DeLaPaz, who appeared to be upset and angry. DeLaPaz told the officer that he had awakened from an afternoon nap and looked into the living room of his residence. He saw N.D.[2] trying to get up out of appellant's lap and appellant refusing to let her do so. He also said he saw appellant's hand moving on N.D.'s private parts.

On cross-examination, DeLaPaz testified that he told appellant: "I saw you do this, Jerry. Leave now." Appellant's counsel then asked DeLaPaz, ". . . what did [appellant] say to you," to which he responded: "He said he didn't do nothing. I said, Jerry, I saw you." N.D. testified and said that appellant had touched her middle, a term which she used to describe the female genitalia.

The trial court then conducted a hearing outside the presence of the jury to determine the admissibility of a statement made by appellant subsequent to the date of the alleged offense. At the hearing, Department of Public Safety (DPS) Trooper Brian J.

---

[2]The child in question.

2

Burzynski testified that on or about December 31, 2000, he stopped appellant because he was driving a car with an expired license plate. The officer ended up arresting appellant because he had a fictitious inspection certificate. Appellant was taken to the highway patrol office where he was given his *Miranda*[3] warnings. The statement taken also contained all the usual *Miranda* warnings. After the officer took that statement, he took appellant back to the jail. Officer Burzynski then ran a criminal history check on appellant. His check of that history revealed the indecency with a child charge which, the officer averred, he believed was final. He asked appellant for his sexual offender registration card and, when he discovered appellant had no such card, he took him back to the Highway Patrol office because he believed appellant was guilty of the offense of failing to register as a sex offender, a felony grade offense. He again read appellant *Miranda* warnings because, he said, he was going to ask him about that offense. However, he discovered that appellant had not yet been convicted of that crime.

The officer then asked appellant if he had an attorney and was told that he did, but because appellant could not remember the attorney's name or whether the attorney was male or female, he was skeptical whether appellant had an attorney. Burzynski then called an assistant Deaf Smith County District Attorney for help in determining if appellant actually had an attorney. However, he received an indefinite answer. The officer decided that appellant was lying about having an attorney, so he went ahead and took a written statement from appellant. In the written statement, appellant made incriminating statements about the indecency charge.

---

[3]*See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

As a result of the hearing, the trial court found that the statement was voluntary but it was not admissible during the State's case-in-chief because appellant had an attorney and his Sixth Amendment right to counsel was violated. Even so, the court opined, because the statement was voluntary, it could be used for impeachment purposes if that door was opened.

The statement was tendered during the State's case-in-chief, after the cross-examination of DeLaPaz, and was admitted over appellant's Fifth Amendment, Sixth Amendment and improper impeachment objections. However, other than those objections, no limiting instruction was requested or given. Other portions of the evidence will be referred to if necessary for a proper discussion of our decision.

Discussion

Because a trial court must be given wide latitude to admit or exclude evidence as it sees fit, a trial court's evidentiary rulings are reviewed under an abuse of discretion standard. Thus, as long as the trial court's ruling is within the zone of reasonable disagreement, an appellate court will not disturb it. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

The Sixth Amendment right to counsel attaches at the initiation of adversarial proceedings against an individual. Once that right attaches, government efforts to elicit information from an accused, including interrogation, represent critical stages at which the right to counsel applies. Additionally, once that right to counsel has attached and has been

4

invoked, as here, any subsequent waiver of that right is ineffective unless counsel has first given permission for the interrogation. *Cobb v. State*, 93 S.W.3d 1, 6 (Tex. Crim. App. 2000), *rev'd on other grounds,* 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001).

In *Cobb,* the court explicated the Sixth Amendment right to counsel and pointed out that the right to counsel attaches at the initiation of adversarial proceedings. *Id.* at 5. As significant here, the court opined, "[o]nce the Sixth Amendment right to counsel attaches, government efforts to elicit information from the accused, including interrogation, represent 'critical stages' at which the right to counsel applies." *Id.* It also emphasized that once the right to counsel has attached, "any subsequent waiver during police initiated interrogation is ineffective unless counsel has first given permission for the interrogation." *Id.* at 6, *citing Michigan v. Jackson*, 475 U.S. 625*,* 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). Additionally, the State's knowledge of the claiming of the right to counsel from one state actor is imputed to another state actor. *Cobb v. State*, 93 S.W.3d at 6.

In relevant part, article 38.22 of the Code of Criminal Procedure provides:

> Sec. 5. Nothing in this article precludes the admission . . . of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness, or of any other statement that may be admissible under law.

Tex. Code Crim. Proc. Ann. art. 38.22 §5 (Vernon Supp. 2004). Moreover, even though a defendant does not testify, a hearsay statement may be subject to impeachment. *Appling v. State*, 904 S.W.2d 912, 917 (Tex. App.–Corpus Christi 1995, pet. ref'd). It is true that courts have refused to allow impeachment by prior inconsistent statements used as a mere

subterfuge to get before the jury evidence not otherwise admissible. *See Hughes v. State*, 4 S.W.3d 1, 4 (Tex. Crim. App. 1999); *Kelly v. State*, 60 S.W.3d 299, 301 (Tex. App.– Dallas 2001, no pet.).

Thus, in order for appellant's statement to have been admissible under article 38.22 §5, two criteria must have been satisfied. First, the statement must have been voluntary, and second, the statement must have some bearing on appellant's credibility. With respect to the first criterion, the record justifies the trial court's conclusion that the statement was voluntary. With respect to the second criterion, we must consider whether the statement had some bearing on appellant's credibility. The record shows that the incriminating statements contained in his written statement bore directly on the credibility of his statement to the child's father at the time of the incident, produced during cross-examination of DeLaPaz, that he "didn't do [anything]." Moreover, there is nothing that indicates the State improperly provoked the testimony regarding appellant's hearsay statement to DeLaPaz.

Parenthetically, we have not overlooked appellant's position that his statement was not hearsay but was a mere description of events. We disagree with that proposition. Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d); *see also Lyons v. Ware*, 668 S.W.2d 767, 768 (Tex. App.–Houston [1st Dist.] 1984, pet. ref'd). It is obvious that appellant's answer was elicited by his attorney for its purported truth, *i.e.*, that he had not committed any crime. Thus, it was a hearsay statement subject to impeachment if any of the other prerequisites to its use were met. Because it was inconsistent with his

6

statement he "didn't do [anything]," appellant's written statement with incriminating content was properly admitted for impeachment purposes.

The general rule is that evidence properly admitted for impeachment purposes is without probative value and cannot be considered as evidence of the defendant's guilt. *Key v. State*, 492 S.W.2d 514, 516 (Tex. Crim. App. 1973). If requested, when evidence is admitted for a limited purpose, the court may restrict the evidence to its proper scope and instruct the jury accordingly. Tex. R. Evid. 105(a). However, in the absence of such a request, "the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal." *Id.* It is the burden of the party opposing the admission of the evidence to request a limiting instruction and, in the event of the failure of the party to request such a limiting instruction, the evidence is admitted for all purposes. *Hammock v. State,* 46 S.W.3d 889, 892 (Tex. Crim. App. 2001*).* Under this record, the trial court did not abuse its discretion and commit reversible error in admitting the statement. Appellant's first two issues are overruled.

As we have noted above, in his third issue, appellant contends that he was denied the effective assistance of counsel at trial. Specifically, appellant faults his counsel for failing to request an instruction that the statement could only be considered for impeachment purposes and had no probative value. He also suggests that counsel should have requested a jury charge to that effect. Additionally, he posits that in addition to the objections made, trial counsel should have raised a Rule 403 objection.[4]

---

[4]The probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 404.

7

In considering this ineffectiveness challenge, we must measure it by the standard explicated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and made applicable in Texas in *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). *See also McFarland v.* State, 928 S.W.2d 482, 499-500 (Tex. Crim. App. 1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997).

Synthesized, the teaching of the cases is that to show ineffectiveness, a claimant must prove that trial counsel's performance so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. In doing so, the claimant must prove:  1) his counsel's performance was deficient, and 2) the deficient performance was so serious that it prejudiced his defense.  That means that the claimant must prove by a preponderance of the evidence that counsel's representation fell below the standard of prevailing professional norms, and there is a reasonable probability that but for counsel's deficiency, the result of the trial would have been different. The review of counsel's performance is highly deferential and in conducting that review, the reviewing court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable performance.

In addition to identifying the acts or omissions alleged to have been ineffective, the claimant must affirmatively establish that they fell below the professional norm for reasonableness.  After proving error, the claimant must affirmatively prove prejudice, namely, that counsel's errors, judged by the totality of the representation and not by isolated instances of error or by only a portion of the trial, denied him a fair trial.  It is not enough for

8

the claimant to show that the errors had some conceivable effect upon the outcome of the trial, but he must show that there is a reasonable probability that but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt. In reviewing the claimant's showing, the reviewing court considers the totality of the evidence before the jury and that record must affirmatively show the alleged ineffectiveness. The failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See McFarland*, 928 S.W.2d at 500.

In considering the record, the State presented evidence that 1) DeLaPaz was an eyewitness to the offense; 2) Officer Allison Forbis averred that the victim had stated to her that appellant had touched her genitals; 3) the child testified that appellant had touched her genitals with his hand and that she tried to push him away; and 4) Sheri Nivens, a registered nurse, testified that she had observed redness on the child's genitals which was consistent with the child's testimony. Under the totality of the evidence in this record, it is not reasonably probable that the outcome of the trial would have been different if trial counsel had requested a limiting instruction.

Moreover, it is possible that trial counsel may have believed that a limiting instruction would have emphasized the importance of the statement and drawn additional attention to it. Indeed, the record is silent about the reasoning and strategy that may have been underlying trial counsel's actions. In this state of the record, we may not speculate about the reasoning that may have been employed by trial counsel and whether that reasoning was faulty. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Because

9

appellant has failed to prove either deficient performance on trial counsel's part or sufficient prejudice from trial counsel's conduct, we must, and do, overrule appellant's third issue.

In sum, all of appellant's issues are overruled and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

Do not publish.