# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00544-CR

**Derreck Lynn Galvan, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
### NO. 10,923, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Derreck Lynn Galvan guilty of aggravated robbery and assessed punishment at thirty-five years and one day in prison and a $10,000 fine. *See* Tex. Pen. Code Ann. § 29.03 (West 2003). Appellant contends that the trial court erred by admitting a witness's out-of-court statement for impeachment and then failing to limit its consideration to that purpose. He also asserts that he received ineffective assistance of counsel. We will affirm the judgment of conviction.

## BACKGROUND

Jose Valencia was employed at an Elgin convenience store. Around midnight on September 30, 2003, Valencia and Irfran Rehman, the store owner, were closing the store when three men entered with bandanas covering their faces. One of these men, who was wearing a red

sweatshirt, pointed a pistol at Rehman's head and demanded money. Valencia was ordered to lie on the floor. After taking money from the cash register and safe, the armed man shot Valencia in the back and the assailants fled. Neither Rehman nor Valencia, who sustained serious permanent injuries, was able to identify the robbers.

Rehman testified that part of Valencia's nightly routine was to clean the store's glass doors, and he said that he distinctly remembered seeing Valencia do this before the robbery. Valencia also recalled cleaning the doors, both inside and out. Rehman further testified that he noticed that the armed robber in the red sweatshirt was not wearing gloves. Police found a palm print and a finger print on the inside of the front door, just above the push bar. An expert analyst testified that these prints matched appellant's known prints.

Sheriff's deputies patrolling roads between Elgin and Bastrop were alerted to be on the watch for a red car that had been described by a witness. Although the deputies did not see such a vehicle, they did find two bandanas and three sweatshirts discarded along the side of a road. The sweatshirts were red, orange, and gray. DNA samples taken from the bandanas and from the red sweatshirt were shown to match appellant's DNA.

Appellant was arrested on the morning after the robbery at the home of his girlfriend, Kimberli Crawford. A red Pontiac Grand Am matching the description of the suspect vehicle was parked at Crawford's house. Crawford testified that the car had been rented by her sister-in-law, and that appellant was driving it on the night of September 30. Crawford said Anthony Hubert and Brandon Benford were visiting appellant at her house that night, and that all three men left in the red Pontiac at about 10:00 p.m. Before he left, appellant took something from a closet that Crawford did not clearly see. She described it as "[s]omething you could hold in your hand. It wasn't big."

2

Crawford said that appellant had a pistol six months earlier, but she did not know if that was the object she saw. Appellant returned to Crawford's house at about 3:00 a.m. and was "acting funny." Later that morning, Crawford noticed a sheriff's vehicle drive past her house twice. When she mentioned this to appellant, he told her "they were coming to get him about a Smithville robbery."

Acting on information received from Anthony Hubert following his arrest, police divers found a .25 caliber pistol in the Colorado River below a bridge outside Bastrop. A firearms expert testified that a shell casing found at the scene of the robbery could have been fired from this weapon, but the condition of the pistol prevented a conclusive test.

## DISCUSSION

### Out-of-court statement

In his first point of error, appellant contends that the trial court erroneously permitted the State to evade the hearsay rule by introducing the out-of-court statement of its own witness, Brandon Benford, in the guise of impeachment. He urges that the error was compounded by the court's failure to give a limiting instruction, thereby allowing the jury to consider the statement as substantive evidence.

After calling Benford as a witness and asking him his name and age, the prosecutor showed him a document marked State exhibit 40 and asked him if he recognized it as a written statement he gave to an Elgin police officer. Benford denied making the statement but admitted that the document bore his signature. The prosecutor then questioned Benford regarding his actions on September 30. For the most part, Benford professed to have no clear memory of that night. He testified that he, appellant, Hubert, and Brandon Clemons were "hanging out," and that he gave

3

appellant a red sweater to wear. He said that he did not see appellant with a gun. On several occasions, the prosecutor asked Benford if his testimony differed from his written statement or from statements he made during an interview with the prosecutor the previous day. Once, defense counsel objected to this as improper impeachment and the objection was sustained.

The State's next witness was Elgin police lieutenant Carlos Araujo. The officer testified regarding his role in the investigation of the robbery, which included taking a written statement from Benford. Araujo identified exhibit 40 as Benford's statement. The officer testified that he wrote down the information as Benford related it and watched as Benford signed each page. He said that Benford was lying if he denied making the statement. The State then offered exhibit 40 in evidence "under the rules of impeachment." Appellant's hearsay objection was sustained.

The State then recalled Benford. After showing him exhibit 40 and telling him that "this purports to be a written statement given by you," the prosecutor asked Benford a series of questions based on the contents of the exhibit, each of which began, "Did you make the statement . . . ." For example, Benford was asked: "Did you make the statement . . . I was at Kim and Derreck's house chilling by watching TV"; "Did you make the statement Derreck went inside the house. When he returned back to the car he had a little .25 pistol"; and "Did you make the statement . . . that I asked [Hubert] what happened and he told me that Derreck shot a dude on the back of his neck." Benford denied making these and all the other statements recited by the prosecutor. The prosecutor then gave Benford the exhibit to read for himself and asked him if it was true. Benford answered that, for the most part, the statement was not true.

After Benford's testimony concluded, the State again offered exhibit 40 in evidence. Appellant again objected to it as hearsay. The court asked if there were any other objections. When

4

counsel said no, the court overruled the hearsay objection and admitted exhibit 40 in evidence. No limiting instruction was requested or given, either at the time the exhibit was admitted or in the court's jury charge.

Briefly summarized, Benford's out-of-court statement recounts how he spent the evening of September 30, 2003, driving around with appellant, Hubert, and Clemons in appellant's red car. Hubert was wearing a gray sweater and Clemons was wearing an orange sweater. Around 10:00 p.m., appellant told the others, "I'm fixing to do something because I need some money." Appellant went into Crawford's house and returned with "a little .25 pistol." As appellant began driving toward Elgin, Benford asked to be dropped off at his uncle's girlfriend's house. Before getting out of the car, Benford let appellant borrow his red sweater. The next morning, after hearing that the police had been at appellant's house, Benford called Hubert and asked him what had happened. Hubert did not want to talk, but said "I didn't do it, Derreck did it." A few hours later, Benford spoke to Hubert again and was told, "Derreck shot a dude on the back of his neck."

Benford's out-of-court statement was hearsay and, in the absence of an applicable hearsay exception, inadmissible to prove the truth of the matters stated. Tex. R. Evid. 802. The parties agree that the statement was offered in evidence pursuant to rule 613(a), which permits the use of a witness's out-of-court statement for impeachment. Tex. R. Evid. 613(a). Appellant contends that the admission of the statement was error because the State was using impeachment as a subterfuge to avoid the hearsay rule. Appellant relies on cases holding that a party may not call a witness it knows to be hostile for the primary purpose of eliciting otherwise inadmissible impeachment evidence. *See Hughes v. State*, 4 S.W.3d 1, 5 (Tex. Crim. App. 1999); *Arrick v. State*, 107 S.W.3d 710, 722 (Tex. App.—Austin 2003, pet. ref'd). In such a case, the party profits from

5

the witness's testimony only if the jury misuses the impeaching evidence by considering it for its truth, and thus any probative value the impeachment evidence might have is substantially outweighed by its prejudicial effect. Tex. R. Evid. 403; *Hughes*, 4 S.W.3d at 5; *Ramirez v. State*, 987 S.W.2d 938, 944 (Tex. App.—Austin 1999, no pet.). The State responds that no rule 403 error is shown because it did not know in advance that Benford would testify as he did. *See Barley v. State*, 906 S.W.2d 27, 37 n.11 (Tex. Crim. App. 1995); *Kelly v. State*, 60 S.W.3d 299, 302 (Tex. App.—Dallas 2001, no pet.). The State also notes that appellant did not request a limiting instruction regarding the statement.

We do not decide whether the admission of Benford's prior statement violated rule 403 because appellant did not object to its admission on that ground. Tex. R. App. P. 33.1(a). And we agree with the State that appellant cannot complain of the absence of a limiting instruction because he did not ask for one. Tex. R. Evid. 105(a). Point of error one is overruled.

**Effectiveness of trial counsel**

In point of error two, appellant contends that his attorney's failure to request a limiting instruction with respect to Benford's prior statement constituted ineffective assistance of counsel. He also complains of counsel's failure to object to the State's questioning of another witness, Anthony Hubert.

The record reflects that, two months before appellant's trial, Hubert pleaded guilty to this offense and was sentenced to twenty years in prison. After calling Hubert as a witness, and outside the jury's presence, the State indicated that it would not use Hubert's testimony against him in any other prosecution. The trial court then ordered Hubert to answer the State's questions. After

6

the jury returned to the courtroom, the prosecutor asked Hubert a total of fourteen questions. In defiance of the court's order, Hubert refused to answer any of them. Among the questions Hubert was asked but refused to answer were whether a document not in evidence (referred to by the prosecutor as State exhibit 39) was his written confession and whether he remembered telling a police officer that he "really didn't want to go on the robbery with Derreck Galvan." Appellant argues that his attorney should have objected to this use of Hubert's out-of-court statement on hearsay and rule 403 grounds.

There is a two-pronged test for ineffectiveness: it must be shown that counsel made such serious errors that she was not functioning effectively as counsel and that these errors prejudiced appellant's defense to such a degree that he was deprived of a fair trial, that is, a trial whose result is reliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex. Crim. App. 1999). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome this presumption, any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). In most cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Id*. The State argues that such is the case here. Appellant did not raise ineffectiveness in his motion for new trial and the record is silent as to trial counsel's trial strategy and tactics. The State urges that we must presume that counsel's conduct at trial had a sound basis. *See Brasher v. State*, 139 S.W.3d 369, 372-73 (Tex. App.—San Antonio 2004, pet. ref'd) (citing *Ex parte Varelas*, 45 S.W.3d 627, 632 (Tex. Crim. App. 2001)).

Counsel objected to the admission of Benford's out-of-court statement on the ground that it was hearsay, which it plainly was. It is obvious from this objection that counsel did not want the statement to be admitted for the truth of the matters stated. Thus, after the statement was admitted for impeachment purposes under rule 613(a), it is difficult to imagine a strategic or tactical reason for counsel not to request a limiting instruction to prevent the jury's consideration of the statement as substantive evidence.[1] It is similarly difficult to explain defense counsel's failure to object when the prosecutor read a part of Hubert's out-of-court statement in violation of the rule against hearsay. This use of the statement was not even arguably justifiable as impeachment since Hubert had flatly refused to testify. But we need not decide whether counsel's performance was within the broad range of reasonable professional assistance because, even if it was not, appellant has not demonstrated that there is a reasonable probability that the result of the trial would have been different but for counsel's errors. *See Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

Benford's out-of-court statement was the only evidence placing in appellant's hands a .25 caliber pistol like that used in the robbery. The statement also described appellant's plan to do something to raise money and Hubert's statement to Benford that appellant had shot someone in the back. On the other hand, appellant's participation in the robbery was shown by the presence of his palm and finger prints on the freshly cleaned door of the store. Appellant's identity as the robber in

---

[1] In a related complaint, appellant contends that his attorney failed to properly object when the prosecutor, during jury argument, referred to statements of fact contained in Benford's out-of-court statement. Because the statement had been admitted in evidence without limitation, its use in this manner was not objectionable. The State's ability to use Benford's statement in this manner is relevant, however, in determining whether counsel's failure to request a limiting instruction prejudiced appellant's defense.

the red sweatshirt who shot Valencia was shown by Benford's in-court testimony and by the presence of appellant's DNA on the red sweatshirt and bandanas found on the road to Bastrop following the robbery. And through Crawford's testimony, the State proved that appellant was driving a red car of the sort seen by witnesses, that he took "something" that may have been a pistol when he left her house that night, and that he made an incriminating statement to Crawford the next morning.

Although the question is a close one, we conclude that it is not reasonably probable that the outcome of appellant's trial would have been different had the jury been instructed not to consider Benford's out-of-court statement as substantive evidence and if the jury had not heard Hubert's out-of-court statement linking appellant to the robbery. We hold that appellant has failed to satisfy his burden of persuasion with regard to *Strickland's* second prong. Point of error two is overruled.

The judgment of conviction is affirmed.

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:  April 20, 2006

Do Not Publish