# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-10-00379-CR
NO. 03-10-00421-CR

**Bobby James Polston Jr., Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF MCCULLOCH COUNTY, 198TH JUDICIAL DISTRICT NOS. 5305 & 5304, HONORABLE MELVIN REX EMERSON JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In two causes consolidated for trial, a jury convicted appellant Bobby James Polston, Jr., of the offense of sexual assault of a child. *See* Tex. Penal Code Ann. § 22.011(a)(2) (West 2011). Punishment, enhanced by a prior conviction for the offense of indecency with a child, was assessed at life imprisonment. *See id*. § 12.42(c)(2) (West 2011). In three points of error, Polston asserts that the district court abused its discretion in allowing the State to elicit testimony concerning prior inconsistent statements made by one of the alleged victims, that the evidence admitted during punishment was insufficient for the district court to find the State's enhancement allegation true, and that the district court abused its discretion in admitting into evidence during punishment the penitentiary ("pen") packet from Polston's prior conviction. We will affirm the judgments.

## BACKGROUND

Polston was charged with sexually assaulting D.W. and K.D., two girls younger than 17 years of age. Both girls, who were 16 and 17 years old at the time of Polston's trial, testified for the State. However, K.D. became a hostile witness during her testimony, and the State proceeded to impeach her credibility with prior inconsistent statements that she had allegedly made a day earlier to Todd Burdick, an investigator with the district attorney's office. These prior statements supported the State's theory that Polston and K.D. were involved in a sexual relationship in the summer of 2008, when K.D. was 15 years old. Repeatedly during her testimony, K.D. denied either making the statements or claimed "not to remember" what she had said. Later during trial, the State also elicited testimony directly from Burdick as to K.D.'s prior inconsistent statements. The State asked Burdick several leading questions relating to whether K.D.'s testimony was "consistent or inconsistent" with statements she had previously made to him. To all but one of these questions, Burdick answered that K.D.'s testimony was "inconsistent" with her prior statements.[1]

The jury found Polston guilty as charged, and the case proceeded to punishment before the court. During punishment, the State sought to prove that Polston had been previously convicted of the offense of indecency with a child in 2004. To prove the prior conviction, the State offered into evidence an alleged pen packet of the conviction and expert testimony from Burdick comparing Polston's fingerprints to the fingerprints contained in the pen packet. According to Burdick, based on his analysis of the fingerprints, "Mr. Polston is the same individual" whose

---

[1] The one exception was that K.D. testified that she had kissed Polston. This testimony, according to Burdick, was consistent with the statement she had made to him.

2

fingerprints were contained in the pen packet. The pen packet was admitted into evidence as State's Exhibit 1. The district court found that Polston had been previously adjudicated of the offense of indecency with a child and sentenced him to life imprisonment. Polston subsequently filed a motion for new trial, which the district court denied. This appeal followed.

## JURISDICTION

As an initial matter, the State raises in its brief a "preliminary challenge to jurisdiction" in which it asserts that this Court lacks jurisdiction over one of the two causes.[2] According to the State, Polston did not timely file a notice of appeal in trial court cause number 5304. As a result, the State claims, this cause must be dismissed, and the only remedy available to Polston is to file an application for writ of habeas corpus in the court of criminal appeals seeking an out-of-time appeal in cause 5304 while this Court stays the proceedings in the appeal involving trial court cause number 5305. *See Slaton v. State*, 981 S.W.2d 208, 210 (Tex. Crim. App. 1998); *Olivo v. State*, 918 S.W.2d 519, 522 (Tex. Crim. App. 1996). *But see Few v. State*, 230 S.W.3d 184, 189 (Tex. Crim. App. 2007) (allowing appellant to amend defective notice of appeal in which appellant had mistakenly written wrong cause number on original notice of appeal; observing that court of criminal appeals has more recently "functionally embraced an approach to perfecting appeals and notice of appeal closer to that of the Texas Supreme Court," which

_____

[2] The State previously raised this issue in a motion to dismiss and stay the proceedings. We denied the motion, but the State "respectfully urges this Honorable Court to reconsider the Motion to Dismiss and Stay previously filed" and dismiss "the purported appeal in 03-10-00421-CR."

3

"'decline[s] to elevate form over substance'") (quoting *Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997)).

In a criminal case, the notice of appeal must be filed within 90 days after the day sentence is imposed or suspended in open court if the defendant timely files a motion for new trial. Tex. R. App. P. 26.1(a)(2). In this case, Polston's sentence was imposed on April 7, 2010. On April 29, Polston timely filed a motion for new trial. However, the caption of the motion for new trial listed only trial court cause number 5305. Polston neglected to list in the caption trial court cause number 5304. The district court denied the motion for new trial, and Polston filed his notice of appeal in each cause on June 21, 2010. Contemporaneous with his notices of appeal, Polston filed a "late filed and out-of-time motion for new trial" in cause number 5304.[3] In the motion, Polston represented that he had inadvertently failed to timely file a motion for new trial in that cause and requested that the district court "consider this out-of-time request, as these circumstances were due through no fault of the Defendant's, and as such, his rights to perfect his appeal in the above styled and numbered case should not be prejudiced."[4]

On that same date, the district court entered an order in which it found that the two causes had been consolidated for purposes of trial and that "as of this date," the causes "remain

---

[3] At the same time, Polston also filed in this Court a motion to extend time to file his notice of appeal in that cause. Finding Polston's notice of appeal to be timely filed for the reasons that follow, we dismissed the motion as moot. Thus, the State's "preliminary challenge to jurisdiction" is actually the third time we have considered the timeliness of Polston's notice of appeal.

[4] Polston's appellate counsel attributed the oversight in part to the fact that he had been recently appointed and was not the attorney during trial.

4

consolidated." The district court thus determined that the timely filed motion for new trial in cause number 5305 "is effective also for the purpose of filing a Motion for New Trial and Motion in Arrest of Judgment by the Defendant in Cause No. 5304." "[A]s a result," the district court continued, "Defendant would have at least 90 days . . . in which to file his Notice of Appeal in Cause No. 5304." The district court added that because the causes were consolidated for trial and "at this time remain consolidated, it was not necessary" for Polston to file, "out of an abundance of caution," a late filed and out-of-time motion for new trial. The district court concluded, "The Court further finds that the Defendant should be entitled to perfect his appeal in Cause No. 5304 by filing a Notice of Appeal on or before the 90th day after the date the Defendant was sentenced in open court."

On this record, we conclude that Polston's notice of appeal in cause number 5304 was timely filed. As the district court observed, the causes had been consolidated for trial and remained consolidated at the time Polston filed his motion for new trial. Thus, when Polston timely filed a motion for new trial in cause number 5305, the motion for new trial was effective for both causes, and Polston had 90 days from the date his sentence was imposed (April 7, 2010) to file his notice of appeal in each cause. Accordingly, each notice of appeal was timely filed on June 21, 2010. The mistake in this case is similar to the mistake in *Few*, in which the appellant wrote the wrong cause number on the notice of appeal. *See Few*, 230 S.W.3d at 185-87. Here, Polston simply neglected to list both cause numbers in the caption of his timely filed motion for new trial. To hold that such an oversight deprives this Court of jurisdiction over one of two causes that had been consolidated for trial and had remained consolidated following trial would be to "elevate form over

5

substance," which we decline to do on the particular circumstances presented here. *See id*. at 190 ("A person's right to appeal a civil or criminal judgment should not depend upon tracking through a trail of technicalities.").

We overrule the State's preliminary challenge to jurisdiction.

## ANALYSIS

**Admission of prior inconsistent statements**

In his first point of error, Polston asserts that the district court abused its discretion in permitting the State to elicit testimony from K.D. and Burdick concerning K.D.'s prior inconsistent statements. The purpose of eliciting this testimony, the State contended at trial, was solely for impeachment purposes. In Polston's view, however, the elicited testimony was used for a "substantive purpose" other than impeachment and, as such, was inadmissible. *See Hughes v. State*, 4 S.W.3d 1, 5 (Tex. Crim. App. 1999) (holding that impeachment evidence of prior inconsistent statements should be excluded by trial court under Rule 403 if prejudicial effect outweighs probative value).

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). A trial court abuses its discretion only when its decision "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

The credibility of a witness may be attacked by any party, including the party calling the witness. Tex. R. Evid. 607. One permissible method of attacking the credibility of a witness is through impeachment by prior inconsistent statements. *See* Tex. R. Evid. 613(a). However, impeachment by prior inconsistent statements may not be permitted when employed as a mere subterfuge to place before the jury evidence that is otherwise inadmissible. *See Hughes*, 4 S.W.3d at 5; *Arrick v. State*, 107 S.W.3d 710, 722 (Tex. App.—Austin 2003, pet. ref'd); *Miranda v. State*, 813 S.W.2d 724, 734-35 (Tex. App.—San Antonio 1991, pet. ref'd); *Pruitt v. State*, 770 S.W.2d 909, 911 (Tex. App.—Fort Worth 1989, pet. ref'd). In order to determine whether the impeachment was for an improper purpose, courts should engage in a Rule 403 balancing analysis. *Hughes*, 4 S.W.3d at 4-5; *Miranda*, 813 S.W.2d at 734. "Courts should balance the probative value of admitting the prior inconsistent statement for its legitimate impeachment purpose against the danger of unfair prejudice created by the jury misusing the statement for substantive purposes." *Miranda*, 813 S.W.2d at 735. "[A] trial court abuses its discretion under Rule 403 when it allows the State to admit impeachment evidence for the primary purpose of placing evidence before the jury that was otherwise inadmissible." *Hughes*, 4 S.W.3d at 5. Factors to consider in the analysis include whether the State was surprised by the witness's recantation, whether the State was able to elicit any favorable testimony from the witness, and whether the State had a legitimate purpose for eliciting the prior inconsistent statements. *See id*.

We first observe, as does the State, that the alleged *Hughes* violation that Polston now raises on appeal does not comport with the objections that he made to the evidence during trial. During K.D.'s testimony, Polston objected on several grounds, including that the prosecutor

7

was being "argumentative" with his own witness, that the prosecutor was engaged in "improper bolstering," and that the prior inconsistent statements were hearsay. However, at no point during K.D.'s testimony did Polston complain that the State was improperly using impeachment evidence for the primary purpose of placing otherwise inadmissible evidence before the jury. Thus, no error has been preserved relating to the prior inconsistent statements that were elicited during K.D.'s testimony. *See* Tex. R. Evid. 33.1; *Barley v. State*, 906 S.W.2d 27, 36-37 (Tex. Crim. App. 1995); *see also Cook v. State*, 858 S.W.2d 467, 474 (Tex. Crim. App. 1993) ("When the complaint on appeal differs from that made at trial, the error is waived."); *Miranda*, 813 S.W.2d at 737-38 (general hearsay objections "preserved nothing for review" on complaint that prior inconsistent statements were being offered for improper purpose); *Hernandez v. State*, No. 03-07-00040-CR, 2010 Tex. App. LEXIS 851, at *54-55 (Tex. App.—Austin Feb. 5, 2010, no pet.) (mem. op., not designated for publication) (holding that appellant failed to raise *Hughes* complaint to trial court).

Similarly, in a hearing prior to Burdick's testimony, Polston urged numerous objections, including that the prior inconsistent statements were hearsay, that they were a violation of *Crawford*,[5] that they were "not relevant," that the evidence was "more prejudicial than probative,"[6] and that the State's methodology of impeachment was improper under Rule 613. The

---

[5] *See Crawford v. Washington*, 541 U.S. 36 (2004).

[6] We note that a general objection under Rule 403 is not sufficient to preserve a *Hughes* complaint. This is because there could be several reasons why evidence is inadmissible under Rule 403, and the Rule 403 analysis in *Hughes* is different than the Rule 403 analysis in other contexts. *See Starnes v. State*, No. 06-06-00099-CR, 2007 Tex. App. LEXIS 3144, at *5-7 (Tex. App.—Texarkana Apr. 26, 2007, no pet.) (mem. op., not designated for publication). In a *Hughes* analysis, the district court must inquire into the extent of the State's knowledge of whether the witness would testify unfavorably and whether the State's purpose for eliciting the evidence was legitimate or was instead being offered "under the guise of impeachment for the primary purpose

8

closest Polston may have come to making a *Hughes* objection was when defense counsel stated to the prosecutor, "You're trying to prove up that's what she said and that's what he did," which the prosecutor disputed. However, in the context of the other objections Polston was making at the time, this appears to be more of a generalized hearsay objection and was not specific enough to put the district court on notice that Polston was making a *Hughes* complaint.[7] *See Miranda*, 813 S.W.2d at 737-38. Polston never argued that the State had knowledge that K.D. would testify unfavorably and that the State was using Burdick's testimony as subterfuge to place before the jury evidence that was otherwise inadmissible. Thus, Polston also failed to preserve error as to the admission of the prior inconsistent statements during Burdick's testimony. *See* Tex. R. App. P. 33.1; *see also United States v. Johnson*, 802 F.2d 1459, 1467 n.18 (D.C. Cir. 1986) (noting that similar complaint raised on appeal was "plainly waived at trial" because objection to evidence was not "sufficiently precise").

Additionally, even if Polston had preserved error, this is not a case in which we could conclude that the district court abused its discretion in admitting the evidence. Unlike in *Hughes*,

---

of placing before the jury evidence which was not otherwise admissible." *See Hughes v. State*, 4 S.W.3d 1, 5 (Tex. Crim. App. 1999). The record does not reflect that Polston put the district court on notice that he was requesting a *Hughes* analysis.

[7] In fact, hearsay was the only objection on which Polston obtained a ruling. The district court explained its ruling as follows:

> I'm going to overrule your objection. I think you have every right to cross examine Mr. Burdick. And his testimony, as far as hearsay goes, I think [the prosecutor] made the perfect argument pursuant to 801(d), *Dinkins v. State*, [894 S.W.2d 330, 347 (Tex. Crim. App. 1995)], an extrajudicial statement or writing which is offered for the purpose of showing what was said rather than for the truth of the matter stated therein does not constitute hearsay.

Polston then obtained a running objection on that ground.

the record in this case would support a finding by the district court that the State was surprised by K.D.'s unfavorable testimony. The State represented to the district court that as recently as 24 hours prior to K.D.'s testimony, she had been interviewed by Burdick and provided a statement describing a sexual relationship with Polston. The district court would not have abused its discretion in finding that the State had reason to believe, when it first called K.D. to the stand, that she would testify in accordance with her statement from the previous day. At most, the State might have been unsure as to how K.D. would testify, but there is nothing in the record to indicate that the State *knew* K.D. would testify unfavorably. *See Kelly v. State*, 60 S.W.3d 299, 302 (Tex. App.—Dallas 2001, no pet.) (observing that "*Hughes* teaches that prior knowledge is key" and that it is not enough for State to "suspect" its witness could turn). In fact, at the beginning of K.D.'s testimony, although she agreed with the prosecutor that it was "fair to state" that she "[did] not want to be here," she appropriately answered the questions asked of her and did not appear argumentative or non-responsive. It was only when the State began asking her to testify to her alleged sexual relationship with Polston that she became, as the State would later observe, a "hostile witness."

Also, the State was able to elicit some favorable testimony from K.D. K.D. testified that on one occasion, she and Polston had kissed each other in his bedroom, that Polston had told her that she was pretty, and that she had "at first" felt a sexual attraction to Polston. The favorable testimony, although limited, would support a finding by the district court that the State did not call K.D. for the primary purpose of eliciting otherwise inadmissible evidence. Additionally, the district court would not have abused its discretion in finding that the State had a legitimate purpose in eliciting the prior inconsistent statements, namely, to impeach the credibility of one of its

10

witnesses. *See Miranda*, 813 S.W.2d at 734 ("The impeachment of one's own witness should be presumed proper under Rule 607."). Because the witness was one of the two alleged victims in the case, the district court would not have abused its discretion in finding that the probative value of the impeachment evidence was high. Nor would the district court have abused its discretion in deciding that the other factors discussed above also weighed in favor of admitting the evidence. *Contra Hughes*, 4 S.W.3d at 7 (concluding that trial court should have excluded evidence because witness had testified unfavorably at pretrial hearing and thus State was not surprised by witness recantation, no favorable testimony was elicited, and there was no legitimate purpose for admitting evidence).

We also observe that prior to Burdick's testimony relating to K.D.'s prior inconsistent statements, the district court provided a limiting instruction to the jury "that the line of questioning you're fixing to hear is not being offered for the truth of the matter asserted."[8] Such an instruction, the district court could have reasonably found, reduced the danger of unfair prejudice from Burdick's testimony. As for the potential prejudicial effect of K.D.'s testimony, the district court would not have abused its discretion in finding that because of how crucial the issue of K.D.'s credibility was to both the State and the defendant, whatever danger of unfair prejudice there might have been did not "substantially outweigh" the probative value of the evidence. On this record, it would not be outside the zone of reasonable disagreement for the district court to resolve the Rule 403 analysis in favor of allowing the State to elicit the prior inconsistent statements. *See Kelly*, 60 S.W.3d at 302.

---

[8] The limiting instruction was requested by the State. No limiting instruction was requested by either Polston or the State during K.D.'s testimony, and no such instruction was given. Polston does not complain on appeal about the absence of a limiting instruction concerning K.D.'s testimony.

We overrule Polston's first point of error.

**Punishment issues**

In his second point of error, Polston asserts that the evidence was insufficient to prove the State's enhancement allegation.[9] In his third point of error, Polston claims that the district court abused its discretion in admitting into evidence State's Exhibit 1, the alleged pen packet of Polston's prior conviction. We will address these issues together.

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). Texas law does not require that the fact of a prior conviction be proven in any specific manner. *Id*. at 922. "Any type of evidence, documentary or testimonial, might suffice." *Id*. The court of criminal appeals has compared the proof required to establish a prior conviction to the pieces of a jigsaw puzzle:

> The trier of fact fits the pieces of the jigsaw puzzle together and weighs the credibility of each piece. Regardless of the type of evidentiary puzzle pieces the State offers to establish the existence of a prior conviction and its link to a specific defendant, the trier of fact determines if these pieces fit together sufficiently to complete the puzzle. The trier of fact looks at the totality of the evidence admitted to determine 1) whether there was a previous conviction, and 2) whether the defendant was the person convicted. If these two elements can be found beyond a

---

[9] The reporter's record of the proceedings does not reflect that the district court received Polston's plea to the allegation. Polston did not object to this apparent oversight during trial. On appeal, Polston contends that his "silence regarding the issue amounts to a plea of not true." The State does not contend otherwise. We note that the written judgments of conviction reflect that Polston pleaded not true to the allegation, and the record reflects that the parties and the court proceeded during punishment as if that was Polston's plea.

12

> reasonable doubt, then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction.

*Id*. at 923 (citing *Margraves v. State*, 34 S.W.3d 912, 918-19 (Tex. Crim. App. 2000); *Human v. State*, 749 S.W.2d 832, 835-36 (Tex. Crim. App. 1988) (op. on reh'g)). The evidence offered by the State can include the testimony of a witness who personally knows the defendant and the fact of his prior conviction and identifies him; expert testimony matching the defendant's fingerprints to the fingerprints on the judgment; photographs of the convicted individual for comparison with the defendant; and identification information such as name, gender, height, eye color, hair color, and date of birth. *See id*. at 921-22; *Beck v. State*, 719 S.W.2d 205, 209 (Tex. Crim. App. 1986); *Littles v. State*, 726 S.W.2d 26, 31-32 (Tex. Crim. App. 1984) (op. on reh'g).

Here, the State offered into evidence a pen packet of Polston's prior conviction. The judgment in the pen packet reflects that in 2004, Polston pleaded guilty to and was sentenced to four years' imprisonment for committing the offense of indecency with a child. The State also offered into evidence Burdick's expert testimony matching Polston's fingerprints to the fingerprints on the judgment. "It is well settled that a pen packet combined with fingerprint analysis linking the packet to the defendant is sufficient proof of prior convictions." *Varnes v. State*, 63 S.W.3d 824, 834 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *Beck*, 719 S.W.2d at 209-10). Nevertheless, Polston contends in this third point of error that the pen packet was inadmissible and the district court abused its discretion in considering it. The basis of Polston's complaint is that the judgment contains the name "Bobby James Polston," not "Bobby James Polston, Jr." Because of

13

this discrepancy, Polston contends, "the State failed to prove beyond a reasonable doubt that the Appellant was in fact the same defendant" named in the pen packet.

We find this contention to be without merit. First, the law is well settled that the inclusion or omission of the suffix "Jr." is immaterial in criminal proceedings. *See Cherry v. State*, 447 S.W.2d 154, 156 (Tex. Crim. App. 1969); *Smith v. State*, 435 S.W.2d 526, 527 (Tex. Crim. App. 1969); *Rubeck v. State*, 61 S.W.3d 741, 742-43 (Tex. App.—Fort Worth 2001, no pet.); *Cuba v. State*, 905 S.W.2d 729, 732 (Tex. App.—Texarkana 1995, no pet.). Moreover, the pen packet contains other identifying information besides a name. It also contains fingerprints which, according to expert testimony, match the fingerprints of the defendant, and a booking photograph of a person identified as "Polston Jr., Bobby James." From this evidence, the district court could reasonably infer that the person identified in the pen packet was the same Polston who was currently before the court. Viewed in the light most favorable to the district court's finding, the above evidence is sufficient to prove beyond a reasonable doubt that Polston was the same person named in the pen packet.

Finally, Polston asserts that the district court failed to make a finding that the enhancement allegation was true. This assertion is not supported by the record. Prior to announcing Polston's sentence, the district court informed Polston that it found that he had been "previously adjudicated for indecency with a child." As this was the offense that the State alleged Polston had committed, it is clear that the district court found the enhancement allegation true, even if it did not actually use the word "true." To the extent Polston is arguing that the district court was required to actually use the word "true" in its oral pronouncement, there is no such requirement

when punishment is before the court.  *See Garner v. State*, 858 S.W.2d 656, 659-60 (Tex. App.—Fort Worth 1993, pet. ref'd); *see also Meineke v. State*, 171 S.W.3d 551 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) ("While it certainly would have been better practice for the trial court to announce its enhancement findings prior to sentencing, its failure to do so was not error so long as it appears from the record that the court found the enhancements 'true' and entered the sentence accordingly."). We also observe that the written judgments of conviction indicate that the district court in fact found the enhancement allegation to be "true." Moreover, Polston did not object to the district court's pronouncement at the time it was made. Thus, any error was waived. *See* Tex. R. App. P. 33.1; *Newby v. State*, 169 S.W.3d 413, 416 (Tex. App.—Texarkana 2005, pet. ref'd).

We overrule Polston's second and third points of error.

## CONCLUSION

We affirm the judgments of the district court.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed:   August 5, 2011

Do Not Publish

15