NO. PD-0760-15

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS
AT AUSTIN

ANTHONY CHAMBERLAIN,
Appellant

v.

THE STATE OF TEXAS,
Appellee

RECEIVED IN
COURT OF CRIMINAL APPEALS

July 28, 2015

ABEL ACOSTA, CLERK

*On appeal in Cause No. F12-63564-M
from the 194TH Judicial District Court
Of Dallas County, Texas
And on Petition for Discretionary Review from
the Fifth District of Texas at Dallas
In Cause No. 05-13-01213-CR*

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

*Counsel of Record:*

**Lynn Richardson**
**Chief Public Defender**

**Katherine A. Drew**
**Chief, Appellate Division**

**Nanette Hendrickson**
**Assistant Public Defender**
Dallas County Public Defender's Office
State Bar Number: 24081423
133 N. Riverfront Blvd., LB 2
Dallas, Texas 75207-399
(214) 653-3550 (*telephone*)
(214) 653-3539 (*fax*)

ATTORNEYS FOR PETITIONER/APPELLANT

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................. iii

STATEMENT REGARDING ORAL ARGUMENT ............................................1

STATEMENT OF THE CASE ...........................................................................1

STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE ...................2

STATEMENT OF FACTS .................................................................................2

GROUND FOR REVIEW ................................................................................2

Whether the Court of Appeals erred in holding the trial court did
not abuse its discretion by admitting Amy Shuemaker's prior
inconsistent statement.

ARGUMENT ..................................................................................................3

    FACTS.........................................................................................................3

    APPLICABLE LAW .....................................................................................5

    THE COURT OF APPEALS' HOLDING IS INCORRECT ........................5

    CONCLUSION ...........................................................................................8

PRAYER FOR RELIEF ...................................................................................9

CERTIFICATE OF SERVICE ..........................................................................9

CERTIFICATE OF COMPLIANCE...................................................................9

# INDEX OF AUTHORITIES

**Cases**

*Chamberlain v. State*,
   No. 05-13-01213-CR, 2015 Tex. App. LEXIS 5310 (Tex. App.—Dallas May
   27, 2015)........................................................................................... 2, 6, 7, 8

*Hughes v. State*,
   4 S.W.3d 1 (Tex. Crim. App. 1999)......................................................... 3, 5, 6

*Kelly v. State*,
   60 S.W.3d  299 (Tex. App.—Dallas 2001, no pet.)..........................................6

**Rules**

Tex. R. App. P. 68.4 (i) .......................................................................................2

Tex. R. Evid. 403 ............................................................................................5, 6

Tex. R. Evid. 607 ...............................................................................................5

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

Anthony Chamberlain, Appellant, respectfully presents to this Honorable Court his Petition for Discretionary Review of the Fifth District Court of Appeals' Opinion affirming the trial court's judgment.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument because this case presents a question of law on issues having statewide impact and possible reoccurrence. Oral argument may be helpful to the members of this Court in the resolution of the issues presented.

## STATEMENT OF THE CASE

Appellant was charged by indictment with the offense of possession of a controlled substance between four and two hundred grams with the intent to deliver. (CR: 8).The indictment also included two enhancement paragraphs alleging prior convictions for possession of a controlled substance over four grams with intent to deliver and possession of a controlled substance over one gram. (CR: 8). Appellant pled not guilty to the primary charge in the indictment. (RR3: 8). A jury trial was held, and the jury found Appellant guilty of the offense. (RR4: 85). After a hearing on punishment, the court assessed punishment at thirty years. (RR5: 46).

1

Judgment was entered by the trial court on August 16, 2013. (CR: 48). A notice of appeal was timely filed. (CR: 46).

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

On May 27, 2015, in an unpublished opinion authored by Justice Schenk, the Court of Appeals for the Fifth District of Texas affirmed the trial court's judgment. *Chamberlain v. State*, No. 05-13-01213-CR, 2015 Tex. App. LEXIS 5310, * 26 (Tex. App.—Dallas May 27, 2015). This Court granted an extension of time to file a Petition for Discretionary Review, which is timely if filed on or before July 27, 2015.

## STATEMENT OF FACTS

The facts of this case, which are extensive, are adequately recited in the Court of Appeal's opinion, which is attached to this Petition as required by TEX. R. APP. P. 68.4 (i).

Suffice it to say that Appellant was charged with and convicted of possession of a controlled substance between four and two hundred grams with the intent to deliver. (CR: 48; RR4: 85).

## GROUND FOR REVIEW

**Whether the Court of Appeals erred in holding the trial court did not abuse its discretion by admitting Amy Shuemaker's prior inconsistent statement.**

## ARGUMENT

The Court of Appeals incorrectly applied the rule in determining whether a prior inconsistent statement is admitted "under the guise of impeachment to introduce inadmissible evidence." *Hughes v. State*, 4 S.W.3d 1, 3-4 (Tex. Crim. App. 1999).

## FACTS

Amie Shuemaker (Shuemaker) was called to testify by the State. (RR3: 195). Shuemaker testified she was sitting in the back seat of the minivan when they were pulled over by the police. (RR3: 196). Shuemaker also stated that she was not there testifying because she wanted to. (RR3: 195). Shuemaker was asked to tell the jury about what happened in the van when they were pulled over to which she repeatedly replied she did not know or did not remember. (RR3: 196, 197, 198, 200, 201, 203, 204). Eventually, Shuemaker refused to answer the prosecutor's questions and said she "d[idn't] have anything else to say to [her]." (RR3: 202).

The prosecutor asked Shuemaker if she remembered writing a statement for the police. (RR3: 198). Shuemaker said she did not. (RR3: 198). When asked if she recognized a copy of a statement the prosecutor showed her, Shuemaker replied "I recognize that you said that's the one I wrote the day this happened." (RR3: 198). She acknowledged that the

handwriting on the statement "could be" hers. (RR3: 199). However, she did not remember writing it. (RR3: 199).

The prosecutor's main goal was to establish Appellant as the owner of the drugs found in the vehicle underneath Shuemaker's seat. (RR3: 200). The prosecutor told Shuemaker "the main thing I need to know is whether or not the brown—the black satchel that contained the methamphetamine came from Mr. Chamberlain." (RR3: 200). Shuemaker responded that she did not know. (RR3: 200).

Eventually, the State called Detective Conway to the stand to offer Shuemaker's prior written statement into evidence. (RR4: 6). Appellant objected to the admission of Shuemaker's prior inconsistent statement based on the lack of foundation presented by the prosecutor, hearsay, relevance, and if admitted, that the statement's prejudicial effect outweighed the probative value. (RR4: 5-6). The trial court overruled the objection. (RR4: 8). Shuemaker's statement was admitted which stated that the "dope that was found was not [hers] it was Anthony Chamberlains." (State's Exhibit 9). The statement goes on to say, "Please do not let anyone know I have said these things or I will deny all of this I have kids & I do not want anything to happen to them." (State's Exhibit 9).

4

**APPLICABLE LAW**

Any party may use a witness' prior inconsistent statement to impeach her credibility. *See* Tex. R. Evid. 607; *Hughes v. State*, 4 S.W.3d 1, 5 (Tex. Crim. App. 1999). A party may not use a prior inconsistent statement as a subterfuge for admitting evidence that would otherwise be inadmissible. *Id.* A party's knowledge that a witness will testify unfavorably is one factor a trial court must consider when determining admissibility under Rule 403. *Id.*; Tex. R. Evid. 403.

Rule 403 states that even when evidence is relevant, it may still be excluded if its probative value is outweighed by "unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. Evidence must be excluded "under Rule 403's balancing test because the State profits from the witness' testimony only if the jury misuses the evidence by considering it for its truth. Consequently, any probative value the impeachment testimony may have is substantially outweighed by its prejudicial effect." *Id*

**THE COURT OF APPEALS' HOLDING IS INCORRECT**

The Court of Appeals' decision is in conflict with the holding of this Court.

5

In applying the Rule 403 balancing test, the Court of Appeals failed to correctly determine if the State deliberately put Shuemaker on the stand to elicit previously inadmissible testimony in the form of her written statement. The Court of Appeals relied heavily on the prosecutor's self-serving statement to the trial court that it felt its witness would "reluctantly testify consistent with the statement." *Chamberlain*, Tex. App. LEXIS at *15-16. In support of this reliance, the Court of Appeals cited its reasoning in *Kelly v. State*. *Id*. (*citing Kelly v. State*, 60 S.W.3d 299, 302 (Tex. App.—Dallas 2001, no pet.)). *Kelly* interpreted *Hughes v. State* wherein this Court reasoned that the State's knowledge is key to the analysis and to merely suspect the witness might turn is not enough. *Kelly*, 60 S.W.3d at 302(*explaining Hughes,* 4 S.W.3d at 5). However, contrary to the Court of Appeals opinion in the case at bar, the State had much more than mere suspicion that Shuemaker would not testify according to her written statement. On Shuemaker's written statement, she stated unequivocally that she would lie if later asked about the contents of the statement. The Court of Appeals did not analyze the State's knowledge of Shuemaker's testimony by considering all of the facts surrounding it, but merely accepted as fact the State's self-serving assertion of its knowledge.

The purpose of the analysis is to prevent the State from receiving the benefit of otherwise inadmissible evidence under the pretense of an uncooperative witness. Therefore, the reviewing court should analyze the facts known to the State at the time the witness testifies. In the present case, the State knew Shuemaker would lie when she testified because she specifically said so in her written statement. This was born out when Shuemaker testified. When the State broached the subject of where in the front seat the drugs came from Shuemaker immediately "refused to answer questions, became argumentative, and stated she did not want to answer questions." *Chamberlain*, Tex. App. LEXIS at *16. The Court of Appeals did not consider Shuemaker's assertion in her written statement when determining the State's knowledge regarding her testimony. Therefore, the Court of Appeals misapplied this Court's standard regarding whether the State had knowledge of the witnesses' recantation.

The Court of Appeals also found that the State elicited some favorable testimony from Shuemaker, which weighed in favor of using her prior statement. According to the Court of Appeals, "Shuemaker testified that she was in the back seat of the van when it was pulled over by the police. She also testified that the black case started in the front seat, was handed to her, and she threw it in the back." *Id*.

The Court of Appeals reasoned that this one statement was "favorable" to the State, "thus supporting a finding by the trial court that the State did not call Shuemaker for the primary purpose of eliciting otherwise inadmissible testimony." *Id*. However, the purpose of Shuemaker's testimony was to prove that the drugs found under her seat in the vehicle originated, specifically, with Appellant. Indeed, the prosecutor told Shuemaker during questioning "the main thing I need to know is whether or not the brown—the black satchel that contained the methamphetamine came from Mr. Chamberlain." (RR3: 200). Therefore, the testimony was only favorable, or probative, for the State if it proved Appellant's knowledge, or actual possession, of the methamphetamine. Otherwise, Shuemaker's testimony that the drugs came from the front seat would have been all the testimony the State needed making admission of the prior statement unnecessary. As such, this one general statement from Shuemaker was not enough to show whether she would testify consistent with her prior statement.

## CONCLUSION

The Court of Appeals' decision to affirm the trial court's ruling admitting Shuemaker's prior consistent statement is in conflict with this Court's ruling.

8

This Court should grant discretionary review to resolve this discrepancy between the Court of Appeal's ruling and the ruling of this Court.

## PRAYER FOR RELIEF

For the reasons herein alleged, Appellant prays this Court grant this petition and, upon reviewing the judgment entered below, remand the case for a new trial.

Respectfully submitted,

Lynn Richardson
Chief Public Defender

/s/ *Nanette Hendrickson*
Nanette Hendrickson
Assistant Public Defender
State Bar No. 24081423

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of July, 2015, a true copy of the foregoing petition for discretionary review was served on Lori Ordiway, Assistant District Attorney, Dallas County Criminal District Attorney's Office, 133 N. Riverfront Blvd., LB-19, 10th Floor, Dallas, Texas, 75207, by electronic and hand delivery; and was also served on, Lisa C. McMinn, State Prosecuting Attorney, P.O. Box 13046, Austin, Texas, 78711 by electronic delivery and by depositing same in the United States Mail, Postage Prepaid.

/s/ *Nanette Hendrickson*
Nanette Hendrickson

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Petition for Discretionary Review contains 2,064 words.

/s/ *Nanette Hendrickson*
Nanette Hendrickson

Lexis Advance®
Research

Document:Chamberlain v. State, 2015 Tex. App. LEXIS 5310

# Chamberlain v. State, 2015 Tex. App. LEXIS 5310

Copy Citation

Court of Appeals of Texas, Fifth District, Dallas

May 27, 2015, Opinion Filed

No. **05-13-01213-CR**

**Reporter**

**2015 Tex. App. LEXIS 5310**

ANTHONY CHAMBERLAIN, Appellant v. THE STATE OF TEXAS, Appellee

**Notice:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** [1] On Appeal from the 194th Judicial District Court, Dallas County, Texas. Trial Court Cause No. F-1263564-M.

## Core Terms

van, trial court, methamphetamine, written statement, drugs, impeachment, deliver, prior inconsistent statement, seat, closing argument, possessed, grams, credibility, overrule, remember, pulled, front, pet, witnesses, admit, trial court's instructions, impeachment purposes, disclosure, guilt, Okay, jury instructions, defense counsel, jury argument, back seat, passenger

## Case Summary

## Overview

HOLDINGS: [1]-A rational jury could have found that defendant, individually or acting with others, knowingly possessed the methamphetamine found in the van with intent to deliver; [2]-The trial court balanced the probative value of admitting the witness's prior inconsistent statement for its legitimate impeachment purpose against the danger of unfair prejudice created by the jury misusing the statement for substantive purposes, and the trial court did not err in finding that the State did not know the witness would recant; [3]-Any error in admitting the witness's prior written statement for the purpose of impeachment had a slight effect, if any, on the jury's decision; [4]-The prosecutor's argument was a reasonable deduction from the evidence and a legitimate plea for law enforcement, and fell within the area of proper jury argument; [5]-The State's expert witness was allowed to testify.

## Outcome

Judgment affirmed.

## ▼ LexisNexis® Headnotes

Criminal Law & Procedure > ... > Standards of Review ▼ > Substantial Evidence ▼ > Sufficiency of Evidence ▼

Criminal Law & Procedure > ... > Standards of Review ▼ > Deferential Review ▼ > Credibility & Demeanor Determinations ▼

*HN1*⬇ The appellate court reviews the sufficiency of the evidence under the standard set out in Jackson. The appellate court examines all the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. The appellate court defers to the jury's determinations of credibility and may not substitute its own judgment for that of the jury.  *Shepardize* - Narrow by this Headnote

Criminal Law & Procedure > ... > 💼 Possession ▼ > Simple Possession ▼ > Elements ▼

*HN2*⬇ To prove unlawful possession of a controlled substance, the State must prove beyond

reasonable doubt that the defendant exercised dominion over the substance and that he knew it to be contraband. Regardless of whether this evidence is direct or circumstantial, it must establish that a defendant's connection to the contraband was more than fortuitous. Thus, mere presence at the location where drugs are found is insufficient, by itself, to establish the requisite degree of control to support a conviction. That said, possession need not be exclusive. When the defendant is not in exclusive possession of the place where the substance is found, there must be additional independent facts and circumstances that link him to the contraband. *Shepardize* - Narrow by this Headnote

Criminal Law & Procedure > ... > 💼 Possession ▼ > Simple Possession ▼ > Elements ▼
Evidence > Admissibility ▼ > Circumstantial & Direct Evidence ▼

**HN3**⬇ Texas courts have recognized a "non-exclusive" list of circumstances supporting an inference of possession. It is not the number of links that is dispositive; rather, it is the logical force of all the evidence, both direct and circumstantial. *Shepardize* - Narrow by this Headnote

Criminal Law & Procedure > ... > 💼 Possession ▼ > Intent to Distribute ▼ > Elements ▼

**HN4**⬇ Intent to deliver may be proved by circumstantial evidence, such as the quantity of drugs possessed, the manner of packaging, whether the defendant possessed a large amount of cash, evidence of drug transactions, and the nature of the location where the defendant was arrested. Intent to deliver is a question of fact for the jury to resolve, and it may be inferred from the acts, words, or conduct of the defendant. *Shepardize* - Narrow by this Headnote

Criminal Law & Procedure > ... > Standards of Review ▼ > Abuse of Discretion ▼ > Evidence ▼

**HN5**⬇ The appellate court reviews the trial court's decision to admit or exclude evidence, as well as its decision as to whether the probative value of evidence was substantially outweighed by the danger of unfair prejudice, under an abuse of discretion standard. *Shepardize* - Narrow by this Headnote

Evidence > ... > One's Own Witnesses ▼ > Application ▼ > General Overview ▼
Evidence > ... > Credibility of Witnesses ▼ > Impeachment ▼ >

Prior Inconsistent Statements ▾

**HN6**⬇ The credibility of a witness may be attacked by any party, including the party calling the witness, Tex. R. Evid. 607. A witness may be impeached with a prior statement when he gives testimony at trial that is inconsistent with the prior statement, Tex. R. Evid. 613(a). The witness must be told the statement's contents, the time and place where the statement was made, and to whom it was made, Tex. R. Evid. 613(a). The witness must also be given the opportunity to explain or deny the statement. The rule of admissibility of evidence of this nature should be liberal and the trial judge should have the discretion to receive any evidence which gives promise of exposing falsehood. *Shepardize* - Narrow by this Headnote

Evidence > ... > Credibility of Witnesses ▾ > Impeachment ▾ >

Prior Inconsistent Statements ▾

Evidence > Relevance ▾ > Exclusion of Relevant Evidence ▾ > 💼

Confusion, Prejudice & Waste of Time ▾

Criminal Law & Procedure > ... > Standards of Review ▾ > Abuse of Discretion ▾ >

Evidence ▾

**HN7**⬇ To be sure, a party may not use a prior inconsistent statement under the guise of impeachment to introduce inadmissible evidence. To determine whether the impeachment was for an improper purpose, courts should conduct a Tex. R. Evid. 403 balancing analysis. A trial court abuses its discretion under Rule 403 when it allows the State to admit impeachment evidence for the primary purpose of placing evidence before the jury that was otherwise inadmissible. Factors to consider in the analysis include whether the State was aware its witness would testify unfavorably, whether the State was able to elicit any favorable testimony from the witness, and whether the State had a legitimate purpose for eliciting the prior inconsistent statement. *Shepardize* - Narrow by this Headnote

Criminal Law & Procedure > ... > Standards of Review ▾ > Harmless & Invited Error ▾ >

Evidence ▾

**HN8**⬇ The erroneous admission or exclusion of evidence is non-constitutional error. The appellate procedural rules require the appellate court to disregard any such error unless it had a substantial and injurious effect or influence in determining the jury's verdict. If, after examining the record as a whole, it appears that an error did not influence the jury or influenced the jury only slightly, the appellate court considers it to be harmless and allow the conviction to stand. The presence of overwhelming evidence of guilt also plays a determinative role in evaluating whether error is harmless. *Shepardize* - Narrow by this Headnote

Criminal Law & Procedure > Trials ▾ > Closing Arguments ▾ > General Overview ▾

Criminal Law & Procedure > Trials ▾ > Jury Instructions ▾ > Curative Instructions ▾

Criminal Law & Procedure > … > Standards of Review ▾ > Abuse of Discretion ▾ > General Overview ▾

**HN9**⬇ The appellate court reviews a trial court's ruling on an objection to improper jury argument for abuse of discretion. Proper jury argument generally falls within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to opposing counsel's argument, and (4) plea for law enforcement. In examining challenges to jury argument, the appellate court considers the remark in the context in which it appears. While the State may not use its closing argument to admit evidence that is outside the record and prejudicial to the defendant, a curative instruction by the court will generally cure error if a prosecutor mentions facts outside the record. *Shepardize* - Narrow by this Headnote

Criminal Law & Procedure > Trials ▾ > Closing Arguments ▾ > Fair Comment & Fair Response ▾

**HN10**⬇ A prosecutor may draw reasonable, fair, and legitimate inferences from the facts in the evidence. And a prosecutor may argue his opinions concerning issues in a case so long as the opinions are based on the evidence in the record. *Shepardize* - Narrow by this Headnote

Criminal Law & Procedure > … > Standards of Review ▾ > Abuse of Discretion ▾ > Witnesses ▾

**HN11**⬇ The appellate court reviews a trial court's decision to admit or exclude expert testimony for an abuse of discretion. A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Shepardize* - Narrow by this Headnote

Criminal Law & Procedure > … > 💼 Discovery by Defendant ▾ > Expert Testimony ▾ > Notice of Intent to Call ▾

**HN12**⬇ See Tex. Code Crim. Proc. Ann. art. 39.14(b) (Supp. 2014). *Shepardize* - Narrow by this Headnote

**Counsel:**  For Appellants: Nanette Hendrickson, Katherine Drew ▾, Lynn Richardson ▾, Dallas, TX.

For Appellees: Alexis E. Hernandez ▾, Susan Hawk, Dallas, TX.

**Judges:** Before Justices Lang ▾, Stoddart, and Schenck. Opinion by Justice Schenck.

**Opinion by:** David J. Schenck

# Opinion

**MEMORANDUM OPINION**

Opinion by Justice Schenck

Appellant Anthony Chamberlain was indicted for possession with intent to deliver four grams or more, but less than two hundred grams, of methamphetamine, a controlled substance. Appellant pled not guilty. A jury found appellant guilty as charged, and the trial court sentenced appellant to thirty years in prison. In four issues, appellant challenges the trial court's rulings on his trial objections to evidence and statements made in the State's closing argument. Appellant also challenges the sufficiency of the evidence to support his conviction. Finding no reversible error, we affirm the judgment of the trial court. Because all dispositive issues are well-settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4.

## I. BACKGROUND

Dallas Police Officer Jeff Miller testified at trial that he received information that someone described as "Big Ant" was selling narcotics from a house located on Pebble Valley in Dallas, Texas. Dallas Police Detective Michael **[2]**  Reuler testified that while he and his partner, Detective Menchaca, were driving by the house in an unmarked vehicle in order to investigate the information they received from Miller, they saw a Dodge minivan parked in front of the house, and several people loading clothing and personal belongings into the van. The van drove away from the house. Reuler and Menchaca followed. Reuler also contacted Miller in his marked police car nearby.

Reuler and Menchaca observed the driver of the van commit two traffic violations and reported this to Miller. Miller caught up with the van and turned on the lights of his marked police car. The van did not stop. Instead, it took approximately a quarter of a mile to pull over to the side of the road, during which time Miller observed everyone in the van frantically moving around. When the van eventually stopped, appellant, the driver, gave Miller an expired license, prompting his arrest. Miller

called Reuler and Menchaca to provide cover while Miller and his partner, Detective Kevin Whitworth, removed the other occupants of the van. Bobby Springer was in the front passenger seat; Amie Shuemaker and Amber McNutt were in the back seat.

The officers then **[3]**  searched the van, finding personal effects, such as a laundry basket, clothes, and luggage in the backseat. The glove box contained marijuana, a large clear baggie that contained marijuana cigarettes, some white pills, Springer's identification, and several smaller green baggies. The officers found a black case under the passenger seat directly behind the driver (where Shuemaker was sitting) that contained a crystal-like substance later determined to be sixteen grams of methamphetamine, white pills, blue pills, more marijuana, and a few small baggies. A glass pipe of the type used for smoking methamphetamine was underneath the front passenger seat. Several needles were scattered on the floor throughout the van. A search of the occupants was equally revealing. Shuemaker possessed a syringe filled with liquid methamphetamine; appellant had $1,500 in cash in his pocket.

The suspected methamphetamine in the black case was sealed and sent to the Southwestern Institute of Forensic Sciences (SWIFS). The resulting tests confirmed the substance was indeed methamphetamine, having a total weight of 26.6 grams of 60 percent purity.

Detective Marcella St. John, an undercover narcotics detective with **[4]**  the Dallas Police Department's clandestine lab squad, testified regarding the making, distributing, and using of methamphetamine. St. John testified that street level of methamphetamine is usually more diluted than 60 percent, suggesting that the drug in this case was from a mid-level supplier. St. John testified that a user can obtain between ten and twenty "hits" from one gram of the drug, and the street price for one gram is approximately one hundred dollars. St. John also testified that it is not common for users to keep large quantities of methamphetamine around. She stated that the amount found in the van indicates to her that appellant was dealing and not just using.

Defense counsel called one witness, Rose Reeder, who testified that her daughter was married to appellant. Reeder testified that on December 16, 2012, she gave appellant $1,500 in cash to bail her daughter out of jail. Appellant was arrested the following day.

Appellant was charged with the offense of possession with intent to deliver methamphetamine, a controlled substance, in an amount of four grams or more, but less than two hundred grams. The trial court also instructed the jury on the law of parties. The jury **[5]**  found appellant guilty of unlawful possession with intent to deliver a controlled substance as charged in the indictment. After a hearing on punishment, the trial court sentenced appellant to thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

We first consider appellant's third issue in which he challenges the legal sufficiency of the evidence to prove that he had intent to deliver.

## A. Standard of Review

**HN1**⬆ We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. We defer to the jury's determinations of credibility and may not substitute our own judgment for that of the jury. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

## B. Applicable Law

**HN2**⬆ To prove unlawful possession of a controlled substance, the State must prove beyond reasonable doubt that the defendant exercised dominion over the substance and that he knew it to be contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Regardless of whether this evidence is direct or circumstantial, **[6]** it must establish that a defendant's connection to the contraband was more than fortuitous. *Blackman v. State*, 350 S.W.3d 588, 594-95 (Tex. Crim. App. 2011). Thus, mere presence at the location where drugs are found is insufficient, by itself, to establish the requisite degree of control to support a conviction. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). That said, possession need not be exclusive. *Henry v. State*, 409 S.W.3d 37, 42 (Tex. App.—Houston [1st Dist.] 2013, no pet.). When the defendant is not in exclusive possession of the place where the substance is found, there must be additional independent facts and circumstances that link him to the contraband. *Poindexter*, 153 S.W.3d at 406. **1**⬇

**HN4**⬆ Intent to deliver may be proved by circumstantial evidence, such as the quantity of drugs possessed, the manner of packaging, whether the defendant possessed a large amount of cash, evidence of drug transactions, and the nature of the location where the defendant was arrested. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). Intent to deliver is a question of fact for the jury to resolve, and it may be inferred from the acts, words, or conduct of the defendant. *Id.*

## C. Analysis

Here, the evidence **[7]** establishes several factors that link appellant to the methamphetamine found in the van. Law enforcement received information that the house on Pebble Valley, Dallas, Texas, was a drug house and that a man nicknamed "Big Ant" was selling methamphetamine at that house. Shuemaker testified that appellant lived there and his name is "Anthony." And, while officers were surveilling the house, they saw appellant standing in front of the house, loading belongings into the van.

Officer Miller testified that for officer-safety purposes, police officers are trained to observe the behavior of passengers in a vehicle being stopped. When the lights on the marked police car signaled the van to pull over, all of the van occupants started moving around. As he put it, hands were going places, people were ducking down and getting back up; it looked as if the van occupants were either hiding something or reaching for weapons. Appellant was driving. Miller testified that appellant could have pulled over immediately because he was in a residential neighborhood with many safe places to stop. Instead, appellant took approximately a quarter of a mile to stop, providing the time necessary for the black case **[8]** to be transferred to the back of the car and hidden beneath the rear seat. That case contained 26.6 grams of methamphetamine. The van was also full of other obvious signs of drug use and trafficking, including a second bag of crystalline substance that was not tested but was also suspected to be methamphetamine; marijuana; a variety of pills, including hydrocodone; and drug paraphernalia, such as a glass pipe, needles, and small empty baggies. Appellant was carrying $1,500 in cash.

While appellant's mere presence in the van where the methamphetamine was found may not have been sufficient, in itself, to establish his control over it, Evans, 202 S.W.3d at 162, he was not merely present in the van. The evidence, viewed as a whole, richly supports a reasonable juror's decision to draw the inference linking appellant, both directly and as a party, to the methamphetamine found in the van, thus showing appellant's knowledge of and control over the methamphetamine.

Considering the quantity and location of drugs and drug paraphernalia found throughout the van, including syringe needles scattered on the floor, a rational jury could have concluded appellant had knowledge of the drugs found in the van. Moreover, when police **[9]** officers turned on their lights to signal the van to pull over, all of the van occupants, including appellant, began moving around as if they were hiding something. A rational jury could have concluded that appellant deliberately delayed pulling over until he and the other occupants in the van had an opportunity to hide the methamphetamine. The logical force of the combined pieces of circumstantial evidence in this case, coupled with reasonable inferences from them, is sufficient evidence to connect appellant to the actual care, custody, control, or management of the methamphetamine found in the van. *See Evans*, 202 S.W.3d at 166.

The evidence also establishes several factors with respect to the "intent to deliver" element of appellant's conviction. *See Kibble v. State*, 340 S.W.3d 14, 18-19 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (factors establishing intent to deliver include the quantity of drugs possessed, the manner of packaging of the drugs, the presence or absence of drug paraphernalia, possession of large amounts of cash in addition to the drugs). St. John testified that the quantity and quality of the methamphetamine found in the van indicated to her that appellant was dealing. Appellant's house was known as a drug distribution point and that someone known as "Big Ant" was the **[10]** person reputed to be selling the drugs. And, in addition to the methamphetamine for which he was charged, the van contained other indicia of drug trafficking, including syringes and small baggies often used to package and sell drugs. While appellant introduced testimony from a family member in an effort to explain the $1,500 in cash he possessed, jurors were not compelled to credit that testimony.

The jury was instructed to determine whether appellant, acting alone or as a party, knowingly possessed the methamphetamine with intent to deliver. Viewing the evidence in a light most

favorable to the verdict, we conclude that a rational jury could have found that appellant, individually or acting with others, knowingly possessed the methamphetamine found in the van with intent to deliver. See *Evans*, 202 S.W.3d at 166. Accordingly, we overrule appellant's third issue.

## III. PRIOR INCONSISTENT STATEMENT

Appellant objected to the admission of Amie Shuemaker's statement under rule 403. Shuemaker gave a written statement to police on the day of the incident indicating that the methamphetamine belonged to appellant. At trial, Shuemaker testified that she did not know if the narcotics were appellant's and did not remember what happened **[11]** that day. The trial court allowed the State to impeach Shuemaker's testimony with her prior written statement and instructed the jury not to consider the statement as substantive evidence of appellant's guilt. In his first issue, appellant contends the trial court erred in overruling his objection to the admissibility of Shuemaker's written statement because of the risk that the jury would misuse Shuemaker's prior inconsistent statement for an unintended purpose

### A. Standard of Review

**HN5** "We review the trial court's decision to admit or exclude evidence, as well as its decision as to whether the probative value of evidence was substantially outweighed by the danger of unfair prejudice, under an abuse of discretion standard." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

### B. Applicable Law

**HN6** The credibility of a witness may be attacked by any party, including the party calling the witness. Tex. R. Evid. 607. A witness may be impeached with a prior statement when he gives testimony at trial that is inconsistent with the prior statement. Tex. R. Evid. 613(a); *Smith v. State*, 520 S.W.2d 383, 386 (Tex. Crim. App. 1975). The witness must be told the statement's contents, the time and place where the statement was made, and to whom it was made. Tex. R. Evid. 613(a). The witness must also be given the opportunity to explain **[12]** or deny the statement. *Id.* "The rule of admissibility of evidence of this nature should be liberal and the trial judge should have the discretion to receive any evidence which gives promise of exposing falsehood." *Smith*, 520 S.W.2d at 386.

**HN7** To be sure, a party may not use a prior inconsistent statement under the guise of impeachment to introduce inadmissible evidence. *Hughes v. State*, 4 S.W.3d 1, 3-4 (Tex. Crim. App. 1999); *Kelly v. State*, 60 S.W.3d 299, 301 (Tex. App.—Dallas 2001, no pet.). To determine whether the impeachment was for an improper purpose, courts should conduct a rule 403

balancing analysis. *Hughes*, 4 S.W.3d at 5. "[A] trial court abuses its discretion under Rule 403 when it allows the State to admit impeachment evidence for the primary purpose of placing evidence before the jury that was otherwise inadmissible." *Id.* Factors to consider in the analysis include whether the State was aware its witness would testify unfavorably, whether the State was able to elicit any favorable testimony from the witness, and whether the State had a legitimate purpose for eliciting the prior inconsistent statement. *See id; see also Kelly*, 60 S.W.3d at 301.

### C. The Record

When the State called Shuemaker to testify, she testified that she did not want to be in court and did not want to testify. Shuemaker testified that she was sitting in the back seat of the van when it was pulled over by the **[13]** police. However, when asked a series of questions regarding the actions of the occupants of the van as it was being pulled over, Shuemaker repeatedly stated that she did not know or did not remember. Eventually, Shuemaker refused to answer the State's questions and stated she did not have anything to say.

The State asked Shuemaker if she remembered writing a statement for the police and Shuemaker replied that she did not. When asked if she recognized a copy of a statement the State showed her, Shuemaker replied, "I recognize that you said that's the one I wrote the day this happened." Shuemaker acknowledged that the handwriting on the statement could be hers, but she stated that she did not remember writing it. When the State asked Shuemaker about specific statements within the written statement, Shuemaker replied, "I plead the Fifth."

Shuemaker testified that the black case containing the methamphetamine was handed to her and she threw it in the back. She also testified that the case came from the front seat. But she stated she did not remember who originally had the case, or who handed the case to her.

Appellant objected to the admission of Shuemaker's prior inconsistent statement based **[14]** on the lack of foundation, hearsay, relevance, and if admitted, the statement's prejudicial effect outweighed its probative value. The trial court overruled appellant's objection; however, the trial court informed counsel that it would give a limiting instruction in the jury charge that the statement was admitted for impeachment purposes. The State then called Detective Conway who described his interview with Shuemaker and identified Shuemaker's written statement. Shuemaker's written statement was admitted into evidence and read to the jury. In her written statement, Shuemaker stated the drugs belonged to appellant, appellant handed the black case to Springer, Springer passed the case to the back seat, and Shuemaker put the case behind her seat. The second page of Shuemaker's written statement contains the following sentence, "[p]lease do not let anyone know I have said these things or I will deny all of this."

### D. Analysis

Appellant contends Shuemaker's prior inconsistent statement was inadmissible because it was used for a substantive purpose other than impeachment—to prove that the drugs found under

Shuemaker's seat in the van belonged to appellant. Appellant argues that the only evidence **[15]** that indicates appellant passed the drugs to the passengers in the back seat was Shuemaker's written statement. Appellant further contends the State knew that Shuemaker would not testify in accordance with her prior written statement.

The record indicates that the trial court balanced the probative value of admitting Shuemaker's prior inconsistent statement for its legitimate impeachment purpose against the danger of unfair prejudice created by the jury misusing the statement for substantive purposes. *Hughes*, 4 S.W.3d at 4-5. The analysis included consideration of whether the State was surprised by the witness's recantation. Appellant argues the State knew Shuemaker would deny making the written statement because Shuemaker stated that she would do so on the second page of the statement. After Shuemaker's testimony, and outside the presence of the jury, the trial court asked the prosecutor if she believed Shuemaker would testify consistent with her written statement when called as a witness. The prosecutor informed the trial court that she believed Shuemaker would reluctantly testify consistent with the statement. *See Kelly*, 60 S.W.3d at 302 (observing that "*Hughes* teaches that prior knowledge is key" and that it is not enough for **[16]** State to "suspect" its witness could turn).

The trial court also considered whether the State was able to elicit any favorable testimony from the witness. At the beginning of Shuemaker's testimony, although she agreed with the prosecutor that she did not want to be there, she appropriately answered the questions asked of her. Shuemaker testified that she was in the back seat of the van when it was pulled over by the police. She also testified that the black case started in the front seat, was handed to her, and she threw it in the back. The State was able to elicit some favorable testimony from Shuemaker, thus supporting a finding by the trial court that the State did not call Shuemaker for the primary purpose of eliciting otherwise inadmissible testimony. It was only when the State began asking Shuemaker about appellant and whether appellant owned the black case and the drugs that Shuemaker refused to answer questions, became argumentative, and stated she did not remember. Based on the record, we cannot say that the trial court abused its discretion in finding that the State did not know Shuemaker would recant. Given Shuemaker's refusal to answer any questions regarding appellant's **[17]** involvement, her inability to remember making a written statement to the police on the day of the incident, and her refusal to identify her own handwriting or signature, we conclude that using Shuemaker's prior written statement to impeach her credibility was not unfairly prejudicial. *See* TEX. R. EVID. 403; *Kelly*, 60 S.W.3d at 302.

Appellant also argues the jury used Shuemaker's statement for its truth despite the trial court's instruction. As part of the written jury charge, the trial court gave the following limiting instruction:

> You are instructed that a witness may be impeached by showing that he or she has made other and different statements out of court from those made before you on the trial. Such impeachment evidence may be considered by you to aid you, if it does so, in determining the weight, if any, to be given the testimony of the witness at trial and his or her credibility. Such impeaching evidence, if any, is not to be considered as tending to establish the alleged guilt of the defendant in such a case. Therefore, you are further instructed that prior inconsistent statements allegedly made by Amie Shuemaker out of court were admitted only for the purpose of impeaching the said

witness, if you find **[18]** it does impeach her, and you cannot consider said impeachment testimony as any evidence whatever of the guilt or innocence of the defendant.

Thus, the jury was instructed not to consider Shuemaker's prior inconsistent statement for its truth. *Hughes*, 4 S.W.3d at 5 (explaining that impeachment evidence is prejudicial when "the State profits from the witness's testimony only if the jury misuses the evidence by considering it for its truth"). Generally, we presume the jury follows the trial court's instructions in the manner presented. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). To rebut this presumption, appellant must point to evidence that the jury failed to follow the trial court's instructions. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). Although appellant argues there was a "huge risk the jury would misuse the written statement for its truth," appellant does not point to any evidence that the jury did not follow the trial court's instruction to use Shuemaker's statement for impeachment purposes only. *Thrift*, 176 S.W.3d at 224. In light of the trial court's proper instruction regarding the use of the evidence and the appellant's failure to rebut the presumption that the jury followed that instruction, we presume the jury did not consider Shuemaker's written statement for its truth. *Id.*

Finally, we conclude that **[19]** any error in admitting Shuemaker's statement would have been harmless in any event. *HN8* The erroneous admission or exclusion of evidence is non-constitutional error. **2** *Wilson v. State*, 451 S.W.3d 880, 886 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Our appellate procedural rules require us to disregard any such error unless it "had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1977). If, after examining the record as a whole, it appears that an error did not influence the jury or influenced the jury only slightly, we consider it to be harmless and allow the conviction to stand. *Neal v. State*, 256 S.W.3d 264, 285 (Tex. Crim. App. 2008). The presence of overwhelming evidence of guilt also plays a determinative role in evaluating whether error is harmless. *Id.*

In reviewing the record as a whole, we consider testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error in connection with other evidence in the case, jury instructions given by the trial court, the State's theory and any defensive theories, closing argument, and even *voir dire*, if material to appellant's claim. *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). The jury heard Shuemaker's live testimony that the drugs came from someone **[20]** in the front seat of the van. The jury also heard testimony from the police officers about movement in the van prior to the stop, and what was found once it was searched.

We concluded above that the evidence was sufficient for the jury to convict appellant of knowingly possessing the methamphetamine found in the van with intent to deliver. The trial court instructed the jury to consider Shuemaker's prior written statement for the purpose of impeachment only. The jury was also charged on the law of parties, which would make any active participant in the offense directly liable. In light of the record evidence, any error in admitting Shuemaker's prior written statement for the purpose of impeachment had a slight effect, if any, on

the jury's decision. *See Neal*, 256 S.W.3d at 285.

The determination of admissibility of evidence is within the sound discretion of the trial court, and will not be reversed on appeal unless a clear abuse of discretion is shown. *Martinez*, 327 S.W.3d at 736; *Kelly*, 60 S.W.3d at 302. We conclude appellant has not shown abuse of discretion or harmful error. We overrule appellant's first issue.

## IV. CLOSING ARGUMENT

In his second issue, appellant contends the trial court erred by overruling his objection to the State's comments about Shuemaker's **[21]** written statement during closing argument. Appellant contends the State's closing argument violated the trial court's instruction regarding Shuemaker's written statement. The State responds that its comments were taken out of context and were allowable jury argument.

### A. Standard of Review and Applicable Law

**HN9** We review a trial court's ruling on an objection to improper jury argument for abuse of discretion. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Proper jury argument generally falls within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to opposing counsel's argument, and (4) plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011). In examining challenges to jury argument, we consider the remark in the context in which it appears. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). While the State may not use its closing argument to admit evidence that is outside the record and prejudicial to the defendant, *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990), a curative instruction by the court will generally cure error if a prosecutor mentions facts outside the record. *Freeman*, 340 S.W.3d at 727-28; *Gamboa v. State*, 296 S.W.3d 574, 580 n.12 (Tex. Crim. App. 2009).

### B. Analysis

Appellant complains that despite the trial court's instruction that Shuemaker's written statement was to be considered for impeachment purposes only, on two occasions during its closing argument, the State asked the **[22]** jury to consider the truth of Shuemaker's prior inconsistent statement to find that the drugs being passed through the vehicle originated with appellant. Defense counsel objected when the prosecutor referred to Shuemaker's statement about the drugs being passed through the van, as follows:

> Prosecutor: Now, you, the jury, are the sole judges of the facts in the case. You
> decide what the facts are. You determine the credibility to give to the witnesses. Now,

you heard Ms. Amie [Shuemaker] testify. Okay? You heard her testify. You see she was reluctant to testify. And you understand why once you heard that statement. Okay? You heard her say that the defendant is her friend. She doesn't want to rat on her friend. She also told you that she has kids to worry about, you know. She lives in a mean world out there in those streets. She knows the consequences of snitching. But she told you if there's any doubt as to who possessed those drugs, there's any doubt as to who those drugs — who the passing of those drugs began with, remember in her statement she told you that the defendant passed the —

Defense Counsel: Your Honor, I object. That's an improper comment on the weight of the evidence, further **[23]** the court's instructions.

Trial Court: I'll overrule, but the Court will instruct the jury to follow the court's instruction in the Court's charge. Go ahead.

Prosecutor: Okay. Ask you to determine credibility of the witnesses in the case. I want you guys not — to look at not only what they said. I want you to look at their demeanor. Okay? I want you to — you know, you're allowed to make fair deductions from all the — everything that you've heard and the observations that you made during this case. Okay?

Appellant argues the trial court erred in overruling his objection to the State's argument because the prosecutor's argument added facts that were not to be considered as evidence of appellant's guilt or innocence. In response, the State asserts that the prosecutor's statement that appellant passed the drugs to another occupant of the van was a fair summary of the evidence and an implicit plea that the jury consider the evidence in the record and Shuemaker's credibility as a witness.

Later in his argument, the prosecutor stated, "The State submits to you that we presented sufficient evidence to prove he was in possession, he exercised care, custody and control of those drugs, okay, that **[24]** he passed them through the vehicle to other members in the vehicle which were hidden from police, which they ultimately found." Defense counsel did not object to this statement at trial; however, appellant now complains that the prosecutor again improperly asked the jury to consider Shuemaker's statement for its truth. The State urges the comment was a summary of the evidence combined with the elements of the offense.

Appellant asserts the prosecutor's argument—that appellant passed the drugs to another occupant of the minivan—went outside the permissible scope of closing argument by adding facts which were not to be considered as evidence of appellant's guilt or innocence, but only for impeachment of Shuemaker's credibility. However, *HN10* a prosecutor may draw reasonable, fair, and legitimate inferences from the facts in the evidence. *Borjan*, 787 S.W.2d at 57. And a prosecutor may argue his opinions concerning issues in a case so long as the opinions are based on the evidence in the record. *Barnard v. State*, 730 S.W.2d 703, 718 (Tex. Crim. App. 1987). The evidence included Shuemaker's testimony that the black bag was passed back to her from the front seat, where appellant was located, and Officer Miller's testimony that all of the van occupants were moving around as if **[25]** they were hiding something. Consequently, we conclude that the prosecutor's argument was a reasonable deduction from the evidence and a legitimate plea for law enforcement, and thus falls within the areas of proper jury argument. *See Freeman*, 340 S.W.3d

at 727. The trial court did not err in overruling defense counsel's objection to the State's closing argument. Appellant's second issue is overruled.

## V. EXPERT WITNESS TESTIMONY

In his fourth issue, appellant asserts the trial court erred in allowing Detective Marcella St. John to testify as an expert witness for the State. St. John was listed on the State's witness list that was provided to appellant. However, the State did not designate St. John as an expert, and the State did not provide appellant with a separate list of expert witnesses. Over appellant's objection, St. John testified regarding her qualifications and experience as a clandestine drug lab expert; the properties of methamphetamine and the way it is produced, distributed, and used; and whether the facts of appellant's case were indicative of drug distribution.

### A. Standard of Review

HN11⚓ We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion. *Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002); *Trejos v. State*, 243 S.W.3d 30, 48 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). A trial court **[26]** abuses its discretion when it acts without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

### B. Analysis

The trial court had discretion to order the disclosure of the names of the State's experts as requested by appellant below. **3**⬇ However, the trial court did not do so. Instead, the trial court deferred ruling on appellant's request for disclosure of the State's expert witnesses and told defense counsel that if he wanted a hearing at the time the State called an expert, the trial court would give him one. Because the record does not contain an order granting appellant's request for disclosure of the State's expert witnesses, the trial court did not err in allowing Detective St. John to testify. *Harris v. State*, 287 S.W.3d 785, 792 (Tex. App.—Houston [1st Dist.] 2009, no pet.), *abrogated on other grounds by Barrios v. State*, 283 S.W.3d 348 (Tex. Crim. App. 2009). We overrule appellant's fourth issue.

## VI. CONCLUSION

Having resolved all of appellant's issues against him, we affirm the judgment of the trial court.

/s/ David J. Schenck

DAVID J. SCHENCK

JUSTICE

Do Not Publish

Tex. R. App. P. 47

## JUDGMENT

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 27th day of May, 2015.

---

**Footnotes**

1 *HN3* Texas courts have recognized a "non-exclusive" list of circumstances supporting an inference of possession. *Evans*, 202 S.W.3d at 162 n.12 (listing same). It is not the number of links that is dispositive; rather, it is the logical force of all the evidence, both direct and circumstantial. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).

2 Appellant did not lodge a contemporaneous Confrontation Clause objection.

3 Article 39.14(b) of the code of criminal procedure allows a trial court to order the State to list its experts upon request:

> *HN12* On motion of a party and on notice to the other parties, the court in which an action is pending may order one or more of the other parties to disclose to the party making the motion the name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence. The court shall specify in the order the time and manner in which the other **[27]** party must make the disclosure to the moving party, but in specifying the time in which the other party shall make disclosure the court shall require the other party to make the disclosure not later than the 20th day before the date the trial begins.

Tex. Code Crim. Proc. Ann. art. 39.14(b) (West Supp. 2014).

---

**Content Type:** Cases

**Terms:** 05-13-01213-CR

**Narrow By:** -None-

**Date and Time:** Jul 27, 2015   03:16:11 p.m. EDT



About LexisNexis®       Privacy Policy       Terms & Conditions       Copyright © 2015 LexisNexis. All rights reserved.

Print this page

# Case # PD-0760-15

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 07/27/2015 02:33:36 PM |
| Case Number | PD-0760-15 |
| Case Description | |
| Assigned to Judge | |
| Attorney | Nanette Hendrickson |
| Firm Name | Dallas County Public Defender |
| Filed By | Nanette Hendrickson |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | PD Office waiver account |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | |
| Order # | |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Petition for Discretionary Review |
| Reference Number | PD-0760-15 |
| Comments | |
| Status | Rejected |

### Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

### Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| Other | 07/28/2015 04:42:59 | The petition for discretionary review does not contain the identity of Judge, Parties and Counsel [Rule 68.4(a)]. You have ten days to tender a corrected petition for |

PM          discretionary review.

## Documents

| *Lead Document* | Chamberlain.PDR.opinon.pdf | [Original] |

## eService Details

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
| --- | --- | --- | --- | --- | --- |
| District Attorney Appellate Division<br>DCDAAppeals@dallascounty.org | | EServe | Sent | Yes | 07/28/2015 08:11:38 AM |
| Lisa C McMinn<br>Lisa.McMinn@spa.texas.gov | State Prosecuting Attorney | EServe | Sent | Yes | 07/28/2015 08:48:24 AM |